IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHANEL, INC., *A NEW YORK CORPORATION*, | HONORABLE JEROME B. SIMANDLE |
| Plaintiff, | Civil Action No. 14-3509 (JBS/KMW) |
| v. | |
| RAFAEL MATOS, *an individual, d/b/a FANDANGOTEES.COM d/b/a JESSMAR d/b/a @NENEMOTT d/b/a NENEMOTT*, and DOES 1-10, | **OPINION** |
| Defendants. | |

APPEARANCES:

Gabriel H. Halpern, Esq.
PINILIS HALPERN, LLC
160 Morris Street
Morristown, NJ 07960
    Attorney for Plaintiff

**SIMANDLE, Chief Judge:**

## I.    INTRODUCTION

In this action for trademark infringement, counterfeiting, and false designation of origin under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) (hereinafter, the "Lanham Act"), Plaintiff Chanel, Inc. (hereinafter, "Plaintiff" or "Chanel") moves for default judgment under Rule 55(b)(2), Fed. R. Civ. P., against Defendant Rafael Matos, an individual, d/b/a fandangotees.com d/b/a jessmar d/b/a @nenemott d/b/a nenemott (hereinafter,

"Defendant" or "Matos") for failure to answer or otherwise respond to Plaintiff's Complaint. [See Docket Item 9.]

For the reasons that follow, Plaintiff's motion will be granted in part, and the Court will enter a default judgment in favor of Plaintiff and against Defendant in the amount of $180,400.  In addition, the Court will enter a permanent injunction, barring Defendant from, among other things, using Plaintiff's protected trademarks in connection with the sale of any unauthorized and/or counterfeit goods.

**II.   BACKGROUND**

  **A. Factual and Procedural Background[1]**

Chanel manufactures and distributes high quality clothing products bearing its long held Trademarks protected under Registration Numbers 1,241,264, 1,241,265, and 4,241,822 (hereinafter, the "Chanel Marks" or "Marks").[2] (Compl. at ¶¶ 2, 7.)

As a result of Chanel's extensive use and promotion of the Chanel Marks, it alleges that these uniquely identifying marks

---

[1] Plaintiff filed the initial Complaint in this action on June 3, 2014 [see Docket Item 1], and successfully effectuated service upon Defendant at his primary residence and principal place of business on June 9, 2014. [See Docket Item 5.]  Following Defendant's failure to answer, move, or otherwise respond to Plaintiff's Complaint, the Clerk of Court entered default on October 30, 2014.  [See Docket Item 7.]  The pending motion followed.

[2] These Marks specifically appear as CHANEL, , and . (Compl. at ¶¶ 2, 7.)

distinctly symbolize "Chanel's quality, reputation, and goodwill," and states that members of the international consuming public "readily identify" and widely recognize "merchandise bearing the Chanel Marks, as being high quality merchandise sponsored and approved by Chanel."[3]  (Id. at ¶¶ 10-13.)  As a result, Chanel "carefully monitor[s] and police[s] the use" of its Marks. (Id. at ¶ 12.)  Indeed, "as part of its ongoing investigations regarding the sale of counterfeit" branded products, Chanel retains private investigative firms "to investigate the suspected sales of counterfeit Chanel branded products."  (Sisbarro Dec. at ¶ 10.)  This action arises from one such investigation.

    Specifically, in January 2014, Plaintiff hired a private investigator (hereinafter, the "Investigator") to investigate Defendant's online advertisement of "CHANEL" and/or "Chanel Inspired" products. (See generally Popp Dec. at ¶ 3; see also Ex. 2 to Popp Dec.)  In connection with this investigation, the Investigator researched Defendant and his website, and ultimately contacted him by telephone, in order to express interest in Defendant's "Chanel Inspired" products.  (Popp Dec. at ¶ 4; Ex. 1 to Gaffigan Dec. (setting forth screenshots of Defendant's websites).)  During the conversation, the

---

[3] Based upon the pervasive extent of these Marks' recognition, Chanel further alleges that they qualify as "famous marks" under the Lanham Act, 15 U.S.C. § 1125(c).  (Compl. at ¶ 11.)

Investigator certifies that Defendant identified himself as "Rafael Matos" and confirmed that his products "aren't the real Chanel shirts," despite their markings.  (Popp Dec. at ¶ 4.) The Investigator thereafter ordered "3 chanel blk shirts" from Defendant's online market for $45. (Id. at ¶ 5.)

Following receipt of the three shirts bearing marks seemingly identical to the Chanel Marks, the investigator forwarded the shirts to Adrienne Hahn Sibarro (hereinafter, "Ms. Sisbarro"), the Director of Intellectual Property and Legal Operations for Chanel, for purposes of review and inspection. ((Id. at ¶ 8; see also Sisbarro Dec. at ¶ 2.)  Upon visual inspection, Ms. Sisbarro certifies that she quickly identified them as "non-genuine, unauthorized Chanel branded products," of a quality and price point substantially different from that of Chanel's genuine goods. (Sisbarro Dec. at ¶ 12.)

Chanel, however, has "never" authorized Defendant to use its Marks, nor consented to Defendant's distribution of infringing products.  (Compl. at ¶ 9, 20; see also Sisbarro Dec. at ¶ 9.)  Nevertheless, Defendant has, with "full knowledge of Chanel's ownership of the Chanel Marks," actively advertised, distributed, and sold clothing products unlawfully bearing the Chanel Marks.  (Compl. at ¶¶ 15-17.)  As a result, Chanel alleges that Defendant has knowingly, intentionally, and/or blindfully engaged in activities that infringe upon "Chanel's

4

rights for the purpose of trading on the goodwill and reputation of Chanel," and to the detriment of the "consuming public" and Chanel.  (Id. at ¶¶ 21-22.)  Chanel therefore seeks monetary damages and injunctive relief for Defendant's various violations of Lanham Act.  (Id. at ¶¶ 27-41.)

### B. Plaintiff's Arguments

In the pending motion, Plaintiff argues that the unchallenged record in this action demonstrates its entitlement to a default judgment on Plaintiff's Lanham Act claims for trademark infringement, counterfeiting, and false designation, and an award of statutory damages, permanent injunctive relief, as well as costs of suit and interest. (See Pl.'s Br. at 6-16.)

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading.  See Fed. R. Civ. P. 55(b)(2); see also Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)). Nevertheless, the decision of whether to enter a default judgment rests within the sound "discretion of the district court," Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984), and the Court of Appeals for the Third Circuit has "repeatedly

state[d] [its] preference that cases be disposed of on the merits whenever practicable." Id. at 1181.

As a result, prior to entering a judgment of default, a court must determine: (1) whether the plaintiff produced sufficient proof of valid service and evidence of jurisdiction,[4] (2) whether the unchallenged facts present a legitimate cause of action, and (3) whether the circumstances otherwise render the entry of default judgment "proper." Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co., No. 11-7137, 2012 WL 3018062, at *2 (D.N.J. July 24, 2012) (internal citations omitted). In so considering, a court must accept as true every "well-pled" factual allegation of the complaint. Comdyne I. Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990). A court need not, however, accept the plaintiff's legal conclusions, nor the plaintiff's assertions concerning damages. See id.; see also Doe v. Simone, No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013) (citations omitted).

---

[4] For that reason, default judgments cannot be entered against unnamed or fictitious parties, including the unnamed "Does 1-10" named in Plaintiff's Complaint. See Flythe v. Solomon and Strauss, LLC, No. 09-6120, 2011 WL 2314391, at *1 (E.D. Pa. June 8, 2011) (collecting cases, and finding that a default judgment could not be entered against an "unnamed defendant").

## IV.  DISCUSSION

### A. The Court Has Personal Jurisdiction over Defendant

As to the first inquiry, the Court must consider whether it possesses specific or general personal jurisdiction over Defendant, an individual who resides and conducts business in New Jersey.[5]  For that reason, however, this inquiry proves relatively straightforward, because an "individual's domicile," or home, constitutes the paradigmatic "forum for the exercise of general jurisdiction."  Daimler AG v. Bauman, ___ U.S. ____, 134 S.Ct. 746, 760 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 ___ U.S. ____, 131 S.Ct. 2846, 2853-54 (2011)).  Here, the record developed in this action plainly reflects that this forum constitutes Defendant's domicile.  (See, e.g., Compl. at ¶ 3 (identifying Defendant's New Jersey address); Ex. 4 to Popp Dec. (identifying the same address).)  Moreover, Plaintiff personally served its Complaint upon Defendant at his residence in New Jersey, and this method of in-forum service has long provided a basis to exercise personal jurisdiction.  See, e.g., Erwin v. Waller Capital Partners, LLC, No. 10-3283, 2010 WL 4053553, at *3 (D.N.J. Oct. 14, 2010) (finding the exercise of personal jurisdiction over the

---

[5] Based upon Plaintiff's certificate of service, the Court finds sufficient proof that Plaintiff personally served Defendant at his primary residence and principal place of business in Mays Landing, New Jersey.  [See Docket Item 5.]

defendant proper, the plaintiff "properly served" the defendant "with a copy of the Summons and the Complaint at his Mantoloking, N.J. residence"). As a result, the Court finds that the undisputed facts readily support the exercise of personal jurisdiction over Defendant.

**B. The Unchallenged Record Establishes Legitimate Claims for Trademark Infringement and Counterfeiting under the Lanham Act**

With respect to the second inquiry, the Court must consider whether the undisputed facts of Plaintiff's Complaint allege legitimate claims for trademark infringement, counterfeiting, and/or false designation of origin.[6]

**1. Trademark Infringement**

"'The law of trademark protects trademark owners in the exclusive use of their marks when use by another would be likely to cause confusion.'" Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472 (3d Cir. 1994) (citations omitted). As a result, in order to prevail on its trademark infringement claim, Plaintiff must demonstrate: (1) that it holds and owns valid and legally protectable marks; (2) that it

---

[6] Courts in the Third Circuit consider claims for trademark infringement and for false designation of origin under an identical standard. A & H Sportswear, Inc., 237 F.3d at 210. As a result, the Court need not independently address Plaintiff's counterfeiting claim, which, in any event, provides no independent entitlement to relief. See 15 U.S.C. § 1117 (setting forth the allowable damages under the Lanham Act).

owns the Chanel Marks; and (3) that Defendant's use of the Marks will likely cause confusion as to the source, affiliation, and/or sponsorship of the goods.  See Fisons Horticulture, Inc., 30 F.3d at 472; see also Coach, Inc. v. Ocean Point Gifts, No. 09-4215, 2010 WL 2521444, at *2 (D.N.J. June 14, 2010)(citing A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000)).

The record developed in connection with the pending motion readily establishes the first two requirements, validity and legal protectability.  Indeed, the certificates of registration issued by the United States Patent and Trademark Office (hereinafter, the "USPTO") for the Chanel Marks demonstrate, on their face, the validity and protectability of the Marks, as well as Chanel's ownership. (See Ex. 1 to Sisbarro Dec.)  For that reason, the Court finds the first two requirements satisfied.  See Coach, Inc. v. Cosmetic House, No. 10-2794, 2011 WL 1211390, at *2 (D.N.J. Mar. 29, 2011) (citing 15 U.S.C. §§ 1057(b), 1115(a)) (noting that a certificate of registration constitutes prima facie evidence of the validity and ownership of the marks); Ocean Point Gifts, No. 09-4215, 2010 WL 2521444, at *3 (same).

Plaintiff, however, must also prove the third requirement, the likelihood of confusion, "which exists 'when the consumers viewing the mark would probably assume'" its association "'with

9

the source of a different product or service identified by a similar mark.'" Fisons Horticulture, Inc., 30 F.3d at 472 (citation omitted).  In applying this standard, the "showing of proof" depends upon whether the goods and services offered by the alleged infringer directly compete with the goods and service offered by the trademark owner.  Id. (citation omitted). Where, however, "'the trademark owner and the alleged infringer deal in competing goods or services,'" as here, "'the court need rarely look beyond the mark itself.'"[7]  Id. at 473 (citations omitted).  In other words, the analysis turns upon whether the marks prove "'confusingly similar.'"  Id. (citation omitted).

Here, even a cursory inspection of the goods offered for sale—and indeed sold—by Defendants leads the Court to the inescapable conclusion that the products advertised and distributed by Defendant bear far more than a confusingly similar mark.  Indeed, Defendant's products bear exact replicas of the protected Chanel Marks. (See Exs. 2 & 4 to Popp Dec.) The identity of the marks, in turn, creates a great likelihood of confusion, and indeed makes such confusion inevitable.[8]  See S

---

[7] Where, however, the alleged infringer produces a non-competing product, the Court instead turns to the ten-factor test adopted by the Court of Appeals for the Third Circuit.  See Fisons Horticulture, Inc., 30 F.3d at 473 (setting forth the factors).
[8] The fact that Defendant's website identifies Defendant's products as "Chanel inspired" does not alter this conclusion, because Defendant's marks remain identical to the protected Chanel Marks. (See Ex. 1 to Gaffigan Dec.)

& R Corp. v. Jiffy Lube Int'l, Inc., 968 F.2d 371, 375 (3d Cir. 1992) (citation omitted) (finding "a great likelihood of confusion" when an infringer uses the exact trademark); Opticians Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 195 (3d Cir. 1990) (same) (citations omitted)

For these reasons, the Court finds that Plaintiff has sufficiently stated a claim for trademark infringement under the Lanham Act, and next addresses Plaintiff's related claim for trademark counterfeiting.

**2. Trademark Counterfeiting**

In order to prevail on a claim for trademark counterfeiting, the plaintiff must demonstrate that the "(1) defendants infringed a registered trademark in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a)," and that (2) the alleged infringer intentionally used the trademark with knowledge of its counterfeit nature, or remained willfully blind to the product's counterfeit nature.  Gordashevsky, 558 F. Supp. 2d at 536.

Having already determined, for the reasons stated above, that Defendant has infringed Plaintiff's registered marks, the Court need only consider whether the undisputed record demonstrates that Defendant intentionally counterfeited the Chanel Marks and/or acted with deliberate disregard.  See id. Coach alleges in this instance that, "members of the consuming public readily identify merchandise bearing the Chanel Marks, as

11

being high quality merchandise sponsored and approved by
Chanel." (Compl. at ¶ 13.) These allegations, accepted as
true, demonstrate that Defendant has, at the very least, acted
with deliberate disregard of Chanel's protected rights in the
Marks, in an effort to profit from Chanel's international
reputation for high-end clothing products. See Coach, Inc. v.
Quisqueya Agency Inc., No. 13-3261, 2014 WL 3345434, at *1
(D.N.J. July 8, 2014) (finding similar allegations sufficient to
meet the second element of a trademark counterfeiting claim);
Coach, Inc. v. Paula's Store Sportwear LLC, No. 13-3263, 2014 WL
347893, at *2 (D.N.J. Jan. 31, 2014) (same). Beyond these
allegations, the certifications attached to Plaintiff's motion
reflect that Defendant himself acknowledged the counterfeit
nature of his "Chanel" products. (See Popp Dec. at ¶ 4
(describing a conversation in which Defendant allegedly stated
that his products "aren't the real Chanel shirts," and are
instated "just order[ed] ... from overseas").)

For these reasons, the Court finds that the unchallenged
facts establish a legitimate cause of action for trademark
counterfeiting.

**C. The Entry of Default Judgment is Proper**

Finally, with respect to the third inquiry, whether the
entry of default judgment would be proper, the Court must
consider "(1) whether the party subject to default has a

meritorious defense, (2) the prejudice suffered by the party
seeking default, and (3) the culpability of the party subject to
default." Doug Brady, Inc. v. New Jersey Bldg. Laborers
Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008).

Here, Defendant has failed to proffer any defense to
Plaintiff's claims, meritorious or otherwise, and the Complaint
does not otherwise suggest the existence of any meritorious
defense. See Surdi v. Prudential Ins. Co. Of Am., No. 08-225,
2008 WL 4280081, at *2 (D.N.J. Sept. 8, 2008) ("The facts as
alleged in the Complaint provide no indication of a meritorious
defense."). Moreover, because Plaintiff has no other means of
seeking damages for the harm caused by Defendant, the Court
finds that Plaintiff would be prejudiced in the absence of a
default judgment. See Ocean Point Gifts, 2010 WL 2521444, at *5
(finding that the defendant's failure to answer complaint
prevented the plaintiff "from prosecuting their case, engaging
in discovery, and seeking relief in the normal fashion"); Gowan
v. Cont'l Airlines, Inc., No. 10-1858, 2012 WL 2838924, at *2
(D.N.J. July 9, 2012) (noting that the inability to "vindicate
rights" absent a default judgment constitutes prejudice); Ramada
Worldwide Inc. v. Courtney Hotels USA, Inc., No. 11-896, 2012 WL
924385, at *5 (D.N.J. Mar. 19, 2012) ("If a default judgment is
not entered, [the plaintiff] will continue to be harmed because
it will not be able to seek damages for its injuries due to

13

defendant's continuing refusal to participate in this case."). Lastly, because Defendant failed to defend against this litigation despite service of the Complaint, the Court finds Defendant's delay attributable to culpable conduct.  See Lee v. A to Z Trading LLC, No. 12-4624, 2014 WL 7339195, *2 (D.N.J. Dec. 23, 2014) (finding the defendant's failure to respond despite awareness of the litigation "due to culpable conduct").

For all of these reasons, the Court finds default judgment warranted as to Plaintiff's claims for trademark infringement and counterfeiting.  Nevertheless, the Court must still assess the amount of damages sought by Plaintiff, as well as Plaintiff's request for permanent injunctive relief.

### D. The Court will award damages under the Lanham Act in the amount of $180,400.

In the pending application, Plaintiff requests an award of $360,000 in statutory damages, together with costs of suit, pursuant to the Lanham Act, 15 U.S.C. § 1117.  (See Pl.'s Br. at 14-15.)  The Court will address each request in turn.

#### 1. Lanham Act Statutory Damages

In actions involving the use of counterfeit marks, the Lanham Act permits the plaintiff, as here, to elect to recover an award of statutory damages, rather than actual damages and profits.  See 15 U.S.C. § 1117(c).  With regard to statutory damages, the Lanham Act, in turn, provides that the plaintiff

14

may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just."  15 U.S.C. § 1117(c)(1).  If, however, the defendant used the counterfeit mark willfully, the maximum increases to $2,000,000 per mark per type of good sold, offered for sale, or distributed.  See 15 U.S.C. § 1117(c)(2).  The Court possesses wide discretion in determining an appropriate award within this range.

Here, Plaintiff requests statutory damages in the total amount of $360,000, for the "two (2) types of goods, namely shirts and parts, bearing marks which were in fact counterfeits of the Chanel Marks protected by three (3) Federal trademark registrations for such goods." (Pl.'s Br. at 13.)  In other words, Plaintiff seeks $60,000 for each infringing act at issue in this litigation.  (See id. at 13-14.)  In support of this request, Plaintiff states that the Court should "start with a baseline [for] the statutory award of $10,000.00,[9] treble it to reflect Defendant's willfulness, and then double it for the purpose of deterrence."[10] (Id. at 13.)

---

[9] Plaintiff, however, provides no explanation concerning the basis for this starting point.
[10] Because the record demonstrates that Defendant intentionally counterfeited the Chanel Marks, the maximum per violation statutory damage amount increases to $2,000,000.  See 15 U.S.C. § 1117(c)(2).  However, because Plaintiff elected statutory damages rather than an award of actual damages and profits, Plaintiff forfeited its right to request treble damages.  See 15

"'In the absence of clear guidelines for setting a statutory damage award, courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants.'" Ocean Point Gifts, 2010 WL 2521444, at *6 (quoting Louis Vuitton Malletier v. Veit, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002)). Statutory damages, however, "serve as a substitute for actual damages." Ocean Point Gifts, 2010 WL 2521444, at *6 (citations omitted). As a result, the requested damages should "'bear some [discernible] relation to the actual damages suffered.'" Id. (citations omitted).

Nevertheless, in assessing the propriety of a requested award, the Court "may be guided by past statutory damages awards." Id. (citations omitted). In Ocean Point Gifts and Fashion Paradise, LLC, this Court surveyed relevant Lanham Act cases, and determined that two factors overwhelmingly motivated statutory damage awards: the point of sale of the infringing goods and the monetary value of the item counterfeited. See, e.g., Fashion Paradise, LLC, 2012 WL 194092, at *7. As relevant here, the Court concluded that cases involving the internet distribution of counterfeit luxury goods routinely resulted in "high damage awards due in part to the wide market exposure that the Internet can provide." Ocean Point Gifts, 2010 WL 2521444,

---

U.S.C. § 1117(b) (noting that treble damages only applies to an award of "profits or [actual] damages").

at *6 (collecting cases involving high damage awards in internet cases).  Indeed, at least one court has stated that internet cases represent "the new era of counterfeiting."  <u>Veit</u>, 211 F. Supp. 2d at 584.

This action amounts, in essence, to the prototypical internet case, in that it involves a suit against someone selling counterfeit luxury items on the internet (rather than more localized at a storefront), thereby enabling the counterfeited goods to be widely disseminated.  For that reason, the Court finds an award in excess of the statutory minimum warranted.

Because there are two types of goods and three marks, the total statutory damage amount must be not less than $6,000, nor more than $12,000,000.  Plaintiff has, as stated above, requested sixty times the minimum statutory damages, $60,000 per mark per good for a total of $360,000.  (<u>See</u> Pl.'s Br. at 14.)

In fixing the amount of statutory damages in this instance, the Court will, as it has done on multiple occasions, follow the approach of <u>Platypus Wear v. Bad Boy Club, Inc.</u>, No. 08-2662, 2009 WL 2147843 (D.N.J. July 15, 2009), by considering the following factors:

> (1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has

17

cooperated in providing particular records from which
to assess the value of the infringing material
produced; and (7) the potential for discouraging the
defendant.

Id. at *7 (citation omitted); see also Ocean Point Gifts, 2010
WL 2521444, at *7 (considering these factors); Fashion Paradise,
LLC, 2012 WL 194092, at *8 (same).

In applying these factors to this action, the Court will
award $30,000 per infringement for a total of $180,000, thirty
times the minimum statutory damages.  This amount falls well
within the parameters established by Congress, takes into
account Defendant's culpability (and even willfulness), and
constitutes a sum significant enough to compensate Plaintiff for
any arguable losses and to deter Defendant and others.  This
award also takes into account that Defendant sold limited types
of goods bearing counterfeited marks, namely, shirts and pants,
and therefore invaded only a narrow segment of the types of
goods bearing genuine Chanel Marks. (See Sisbarro Dec. at ¶ 4
(noting that the Chanel Marks generally appear on, among other
things, suits, jackets, skirts, dresses, pants, blouses, tunics,
sweaters, cardigans, tee-shirts, coats, raincoats, scarves,
shoes and boots).)  Moreover, this statutory damage award does
not preclude the Court from revisiting this issue in the event
Defendant or those in privity with him violate the injunction
being entered herein.

For these reasons, the Court will award $180,000 in statutory damages for Defendant's Lanham Act violations.

**2. Costs of Suit**

In addition to statutory damages, Plaintiff requests an award of costs in the amount of the $400 filing fee for this litigation. (See Pl.'s Br. at 15.) In the event a defendant violates a protected mark, the Lanham Act entitles the plaintiff to "the costs of the action." 15 U.S.C. § 1117(a)(3). As a result, the Court will award Plaintiff the requested costs, and will include an award of the $400 filing fee in the default judgment.[11]

**E. Permanent Injunctive Relief**

Plaintiff lastly requests the equitable relief of a permanent injunction, barring Defendant from infringing and/or counterfeiting the Chanel Marks.

"A permanent injunction issues to a party after winning on the merits and is ordinarily granted upon a finding of trademark infringement." Lermer Germany GmbH v. Lermer Corp., 94 F.3d

---

[11] Plaintiff also requests an award of prejudgment interest pursuant to 28 U.S.C. § 1961. The Court may, in its discretion, award prejudgment interest. See Am. Honda Motor Co., Inc. v. Two Wheel Corp., 918 F.2d 1060, 1064 (2d Cir. 1990). Nevertheless, such an award is ordinarily reserved for "'exceptional' cases," and Plaintiff has not demonstrated that this action rises to that level. Id. (citations omitted). For that reason, Plaintiff's request for prejudgment interest will be denied.

1575, 1577 (Fed. Cir. 1996).  Nevertheless, in seeking a
permanent injunction, "[a] plaintiff must demonstrate: (1) that
it has suffered an irreparable injury; (2) that the remedies
available at law, such as monetary damages," prove inadequate to
compensate for that injury; (3) that the balance of hardships
between the plaintiff and defendant favor equitable relief; and
(4) "that the public interest would not be disserved by a
permanent injunction." eBay Inc. v. MercExchange, LLC, 547 U.S.
388, 391 (2006).  Based upon the present record, the Court finds
that Plaintiff has met the four-factor test for injunctive
relief, and the Court grants permanent injunctive relief.

Indeed, having established that Defendant's use of
Plaintiff's exact Marks creates a clear case of confusion, and
that Defendant's counterfeited products of inferior quality
arguably diminish Chanel's reputation, irreparable injury
becomes "'the inescapable conclusion.'" Pappan Enters., Inc. v.
Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998)
(citation omitted); see also Cottman Transmissions Sys., LLC v.
Gano, No. 12-5223, 2013 WL 842709, at *6 (E.D. Pa. Mar. 7, 2013)
(finding irreparable injury under similar circumstances).  The
Court therefore finds the first requirement, irreparable injury,
satisfied.  With respect to the second requirement, although a
remedy at law would provide some degree of monetary relief, it
would not adequately compensate Plaintiff for the reputational

20

and goodwill injury associated with the distribution of low-
quality counterfeit goods, nor would it necessarily prevent, or
even impede, future trademark infringement.  See Coach, Inc. v.
Bags & Accessories, No. 10-2555, 2011 WL 1882403, at *9 (D.N.J.
May 17, 2011) (citing Louis Vuitton Malletier, S.A., 2009 WL
3633882, at *5).  A balancing of hardships strongly favors
issuance of an injunction.  Indeed, the injunction sought only
requires Defendant to abide by the law and to refrain from
infringing the federally protected Chanel Marks, whereas in the
absence of an injunction, Plaintiff faces the hardships that
gave rise to this litigation: loss of reputation, goodwill, and
sales.  See id.  In that respect, any harm suffered by Defendant
as a result of an injunction would be self-inflicted.  See
Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck
Consumer Pharm. Co., 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he
injury a defendant might suffer if an injunction were imposed
may be discounted by the fact that the defendant brought the
injury upon itself.").  Finally, issuing an injunction that will
enforce Plaintiff's rights in the Chanel Marks furthers the
public's interest in the protection of trademarks (and the
trademark holder's property interest) and in the avoidance of
consumer confusion.  See Opticians Ass'n of Am., 920 F.2d at 197
("Public interest can be defined in a number of ways, but in a
trademark case, it is most often a synonym for the right of the

public not to be deceived or confused."); Bill Blass, Ltd. v. SAZ Corp., 751 F.2d 152, 156 (3d Cir. 1984) ("[T]he public interest is advanced by recognition of property interests in trademarks. Thus the public interest is advanced by preventing the erosion of the value of such interests.").

For these reasons, the Court will grant Plaintiff the relief it seeks by enjoining Defendant from infringing and/or counterfeiting the Chanel Marks.  See Holt's Co. v. Hoboken Cigars, LLC, No. 09-3782, 2010 WL 4687843, at *5 (D.N.J. Nov. 10, 2010) ("The permanent injunction requested here is proper, considering it simply requires that Defendants continue to conform their actions to the relevant trademark law."); Gordashevsky, 558 F. Supp. 2d at 540 ("[B]ecause the Defendants' illegal conduct does not serve a legitimate purpose and harms both Chanel and the public interest, the balance of equities weighs strongly in favor of granting injunctive relief.").

## VI.  CONCLUSION

For all of these reasons, the Court will grant Plaintiff's motion for default judgment, will enter a default judgment of $180,400, and will issue a permanent injunction. An accompanying order for default judgment and permanent injunction will be entered.

 August 13, 2015                      s/ Jerome B. Simandle
Date                                 JEROME B. SIMANDLE
                                     Chief U.S. District Judge

22